**Shannon Kelly HUNT, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 10–06–00284–CR.**

Court of Appeals of Texas, Waco.

Sept. 19, 2007.

Shelly D. Fowler, Cleburne, for appellant.

Dale S. Hanna, Johnson County Dist. Atty., Cleburne, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

After the court dismissed Shannon Kelly Hunt's motion to dismiss on speedy trial grounds, Hunt pleaded guilty to burglary of a habitation. Pursuant to a plea bargain, the court sentenced him to eight years' imprisonment. Hunt contends in his sole issue that the court erred by denying his motion to dismiss. We will affirm.

A Johnson County grand jury presented the indictment against Hunt in June 2001. He was arrested in Mississippi on this charge in March 2002. He was convicted of felony charges in Mississippi and sentenced to prison there, where he remained until he was released to Texas in early 2005. He went to trial in October 2005.

### Applicable Law

▆▆▆ "[W]e apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a *de novo* standard for the legal compo-

nents." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App.2002); *State v. Manley*, 220 S.W.3d 116, 119 (Tex.App.-Waco 2007, no pet.). Because the court denied Hunt's speedy trial motion, we must presume that the court resolved any disputed fact issues in favor of the State, and we must defer to any implied findings supported by the record. *Id.* We "must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex.Crim.App.2003); *Manley*, 220 S.W.3d at 119.

■ We balance four non-exclusive factors when considering a speedy trial claim: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness of the assertion of the right to a speedy trial; and (4) any prejudice caused by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Shaw*, 117 S.W.3d at 888–89; *Manley*, 220 S.W.3d at 119.

### Length of Delay

■ The length of delay is "a triggering mechanism" for consideration of the remaining factors. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *Shaw*, 117 S.W.3d at 889; *Manley*, 220 S.W.3d at 122. The delay is measured from the date of arrest or the presentment of the indictment, whichever occurs first, to the date of trial. *See Shaw*, 117 S.W.3d at 889; *Manley*, 220 S.W.3d at 122. A delay of one year is "unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992); *Manley*, 220 S.W.3d at 122; *accord Shaw*, 117 S.W.3d at 889. Here, the length of delay from the date of the indictment until the date of trial was more than four years, which is more than sufficient to require consideration of the remaining factors. *See id.*

### Reasons for Delay

■ "The State has the burden of justifying the delay." *Shaw*, 117 S.W.3d at 889 n. 3; *Manley*, 220 S.W.3d at 122. Different weights are assigned to the various reasons for the delay asserted by the State. *Shaw*, 117 S.W.3d at 889; *Manley*, 220 S.W.3d at 122.

The primary reasons offered by the State to explain the delay are that: (1) Hunt was incarcerated in Mississippi and Mississippi officials would not release him to Texas custody until he had served his prison sentence in that state; and (2) after Hunt's return to Texas, he requested several continuances before his case went to trial.

Hunt responds that the State should have arranged for him to be returned to Texas sooner to face trial. However, Mississippi is not a signatory to the Interstate Agreement on Detainers Act and refused to release Hunt to Texas custody until he had served his sentence. *See Robinson v. Miss. State Bd. of Probation & Parole*, 2007 WL 325795, at *1 (S.D.Miss. Jan. 31, 2007) (mem. op.); *Smothers v. State*, 741 So.2d 205, 206 (Miss.1999).

Hunt remained at large for almost nine months after he was indicted. Then, he was incarcerated in Mississippi for nearly two more years before he was released and made available to Texas authorities. These delays should not be held against the State. *See Braxton v. Dunn*, 803 S.W.2d 318, 320 (Tex.Crim.App.1991) (orig. proceeding) (Louisiana authorities' refusal to release prisoner was "valid reason" for delay); *Petrick v. State*, 832 S.W.2d 767, 772 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (no speedy trial violation where defendant at large in Minnesota for 15 months then fought extradition for another 14 months).

Hunt was in Texas for about eight months before trial. He made bail on February 24. He appeared on April 21 without counsel and advised the court that he planned to retain an attorney. He appeared with counsel on May 2 and was given a scheduling order. At the scheduled May 19 pretrial hearing, Hunt asked that the case be "passed to the next pretrial hearing." He made a similar request in June. At an August hearing, Hunt's counsel announced that he was rejecting the State's plea offer but suggested the matter could be resolved "based on some restitution that's owed." Thus, the case was again rescheduled. Hunt's counsel appeared without him for a September 6 hearing and informed the court that Hunt's whereabouts were unknown. The court revoked Hunt's appearance bond. A hearing was held two weeks later at which time the court was advised by the State that the matter could not be tried the following week but could be tried in the second week of October.

After reviewing the proceedings from the time Hunt made bail in February 2005 until trial, we may presume that the court attributed most of the delay during this period to Hunt. *See Zamorano*, 84 S.W.3d at 648 (appellate court must presume that trial court resolved any disputed fact issues against losing party and must defer to any implied findings supported by the record); *Manley*, 220 S.W.3d at 119 (same). We likewise presume that the trial court attributed virtually all of the delay in this case to Hunt because: (1) he remained at large for nine months after being indicted; (2) he was held by Mississippi authorities for about two years; and (3) he requested numerous continuances after he was released to Texas authorities.

### Assertion of Right

Hunt asserted his right to a speedy trial on several occasions. He filed speedy trial motions twice while in Mississippi custody. However, the State was powerless to act on his request on those occasions. *See Robinson*, 2007 WL 325795, at *1; *Smothers*, 741 So.2d at 206; *see also Braxton*, 803 S.W.2d at 320. Hunt next asserted his right to speedy trial by filing a motion to dismiss on the day of trial, more than seven months after he first appeared in a Texas court. Although the last pretrial hearing was held one week before trial and numerous other hearings had been previously conducted, Hunt did not mention his right to a speedy trial at any of them.

Hunt asserted his right to a speedy trial on several occasions. However, he only requested dismissals on these occasions, the State was unable to grant two of his requests due to his out-of-state incarceration, and he did not assert his right to a speedy trial after arriving in Texas until the day of trial. Therefore, this factor weighs against a finding of a violation, although not heavily. *See Marquez v. State*, 165 S.W.3d 741, 749 (Tex.App.-San Antonio 2005, pet. ref'd); *Ervin v. State*, 125 S.W.3d 542 547 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *State v. Williams*, 90 S.W.3d 913, 920 (Tex.App.-Corpus Christi 2002, no pet.).

### Prejudice

Hunt contends that he was prejudiced by the delay because: (1) a neighbor whom he identifies in his brief as a "potentially exculpatory witness" died; (2) he has been unable to locate several unnamed witnesses; (3) he is unable to obtain any records from his employer at the time of the burglary which he would offer to establish that he was "somewhere else" when the offense was committed; and (4) his classification by the Mississippi Department of Corrections was changed because of the Texas felony charge, he was moved

from a minimum security unit to a maximum security unit, and he was denied a number of inmate privileges he would have retained at the minimum security unit.

■ "To establish prejudice because of an unavailable witness, a defendant must show that 'the witness[ ] [is] unavailable, that [her] testimony might be material and relevant to his case, and that he has exercised due diligence in his attempt to find [her] and produce [her] for trial.'" *Shea v. State*, 167 S.W.3d 98, 103 (Tex.App.-Waco 2005, pet. ref'd) (quoting *Meyer v. State*, 27 S.W.3d 644, 650 (Tex.App.-Waco 2000, pet. ref'd) (quoting *Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App.1973))); *accord Palacios v. State*, 225 S.W.3d 162, 169 (Tex.App.-El Paso 2005, pet. ref'd). Here, Hunt's nonspecific testimony that these unavailable witnesses and employment records could establish that he was "somewhere else" when the offense was committed does not satisfy this requirement. *See Harris*, 489 S.W.2d at 308–09; *Palacios*, 225 S.W.3d at 169–70; *Shea*, 167 S.W.3d at 103; *Meyer*, 27 S.W.3d at 650. Nor does his testimony that his former neighbor (now deceased) is no longer available to testify. *Id.*

With regard to the change in Hunt's inmate classification by the Mississippi Department of Corrections, this happened because Hunt was charged with an additional felony offense, not because of any delay in his Texas trial. And as stated before, Mississippi refused to relinquish custody of Hunt until he had served his sentence. Accordingly, this factor weighs against a finding of a speedy trial violation.

## Conclusion

The delay in Hunt's case between indictment and trial was more than four years. During most of that time, Hunt was either at large or in the custody of the Mississippi Department of Corrections, which would not release Hunt for prosecution in this state until he had served his sentence. After his arrival in Texas, he did not assert his right to a speedy trial until the day he was tried, and most of the delays during this period were due to his own requests for postponements. Hunt never actually requested a "speedy trial" but instead sought dismissal of the charges. And finally, he did not demonstrate with any specificity how he was prejudiced by the delay. Under these circumstances, we cannot say that Hunt's right to a speedy trial was violated. Therefore, we overrule his sole point and affirm the judgment.